Miles N. Clark, Esq.
Nevada Bar No. 13848
LAW OFFICES OF MILES N. CLARK, LLC
5510 S. Fort Apache Rd, Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
Fax: (702) 552-2370
Email: miles@milesclarklaw.com

*Attorney for Plaintiff, Robert T. Huffman*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA

|  |  |
|---|---|
| ROBERT T. HUFFMAN, | Civil Action No.: 1:23-cv-01990 |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** |
| AVANT, LLC; EQUIFAX INFORMATION SERVICES, LLC; NCB MANAGEMENT SERVICES, INC.; and TRANS UNION LLC, | |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

### JURISDICTION AND VENUE

1. This Court has federal question jurisdiction because this case arises out of violations of federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331.

2. This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3. Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in Marion County, State of Indiana and because Defendants are subject to personal jurisdiction in Marion County,

State of Indiana as they conduct business there. Venue is also proper because the conduct giving rise to this action occurred in Indiana. 28 U.S.C. § 1391(b)(2).

**PARTIES**

4.    Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

5.    Plaintiff Robert T. Huffman ("Plaintiff") is a natural person residing in Marion County, State of Indiana. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6.    Defendant Avant, LLC, is a corporation doing business in the State of Indiana.  Avant is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

7.    Defendant NCB Management Services, Inc. ("NCB") is a corporation doing business in the State of Indiana.  NBC is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

8.    Defendant Equifax Information Services, LLC ("Equifax") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer credit reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), and a nationwide consumer reporting agency under 15 U.S.C. § 1681a(p).  Equifax is a corporation which does business in the State of Indiana.

9.    Defendant Trans Union LLC ("Trans Union") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer credit reports to third

parties, and uses interstate commerce to prepare and/or furnish the reports.  Trans Union is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), and a nationwide consumer reporting agency under 15 U.S.C. § 1681a(p).  Trans Union is a corporation which does business in the State of Indiana.

10.    Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants.

## FACTUAL ALLEGATIONS – FCRA VIOLATIONS

### General Allegations, FCRA Liability, and Industry Reporting Guidelines

11.    Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

12.    The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

13.    The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit

decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

14. Furthering the FCRA's goal of accuracy, a consumer may procure a "disclosure" of all information a reporting agency has stored on them under 15 U.S.C. § 1681g to, *inter alia*, review their information for inaccuracies or the presence of identity theft. To the extent Plaintiffs' creditors chose to furnish data to a Consumer Reporting Agency ("CRA"), such data, if accurate, is typically included in Plaintiffs' "consumer files," which the CRA must disclose to a consumer in a clear and accurate manner upon request. 15 U.S.C. § 1681g. Section 1681g disclosures are "consumer reports" under the FCRA when they are acquired for free from nationwide consumer reporting agencies once during any 12-month period. *See* 15 U.S.C. § 1681j(a)(2); *see also id.* at § 1681a(p).

15. The FCRA's protection provisions also permit consumers to dispute the accuracy or completeness any item of information appearing in their file. 15 U.S.C. § 1681i(a). Once notified of a dispute, a CRA must notify the source or furnisher of information, including all relevant information regarding the dispute the CRA received from the consumer. 15 U.S.C. § 1681i(a)(2).

16. Upon receipt of a notice pursuant to 15 U.S.C. § 1681i(a)(2), the furnisher of the information must review all relevant information provided by the CRA, conduct an investigation of the disputed item, and report the results of the investigation back to the CRA. 15 U.S.C. § 1681s-2(b). This reinvestigation must conclude no later than 30 days

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

after submission of a consumer dispute, or 45 days if the dispute pertains to a Section 1681j(a) disclosure. *See* 15 U.S.C. § 1681i.

17.    If the furnisher's investigation yields results such that the information disputed by the consumer is incomplete or inaccurate, then the furnisher must report those results to all other CRAs. 15 U.S.C. § 1681s-2(b)(1)(D).

18.    If the CRA's reinvestigation (which necessarily includes the furnisher's investigation) finds the disputed information to be inaccurate, incomplete, or unable to be verified, then the CRA must either promptly delete that information or modify it, as appropriate, based on the results of the reinvestigation. 15 U.S.C. § 1681i(a)(5)(A).

19.    The CRA must timely notify the disputing consumer regarding the results of the reinvestigation. 15 U.S.C. § 1681i(a)(6).   As part of this notice of results of reinvestigation, the CRA must provide a "consumer report." 15 U.S.C. § 1681i(a)(6)(B)(ii).

20.    Whenever a reporting agency prepares a consumer report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).  This obligation extends to both Section 1681g reports, 1681i(a)(6) reports, and any other consumer report fitting the definition contained in 15 U.S.C. § 1681a(d), whether sent to a consumer or any other party.

21.    CRAs and furnishers also must comply with industry reporting guidelines from the Consumer Data Industry Association ("CDIA"), in the form of industry reporting standards called the "Consumer Reporting Resource Guide" or "Metro 2."  The CDIA's standards are composed by only some credit-reporting stakeholders – i.e., reporting

agencies and furnishers, but not consumers on whom data is reported – and as such their guidance often favors those parties at the consumers' expense.  Nevertheless, courts have held that a furnisher's failure to follow industry reporting guidelines may establish materially misleading reporting where (1) the furnisher adopts the standard, (2) the furnisher deviated from the standard, and (3) this "deviation might adversely affect credit decisions—in other words, that entit[ies] would have expected [the defendant furnisher] to report in compliance with the [CRRG] guidelines." *Nissou-Rabban v. Capital One Bank (USA)*, No. 15-cv-1675 JLS (DHB), 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) (citations and quotations omitted).  *See also Wylie v. Experian, LLC*, No. 16-cv-102, 2017 WL 835205, at *5-7 (W.D. Pa. Mar. 2, 2017).

22. On information and belief, Defendants adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

23. Thus, the incomplete and inaccurate reporting provided to Plaintiffs as described herein departed from the credit industry's own reporting standards and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

24. This is true both under Metro 2, and if Metro 2 does not apply.  For example, even if Metro 2 does not apply, then Defendants were required to report historically accurate information, pursuant to 15 U.S.C. §§ 1681g, 1681e(b), 1681i and 1681s-2(b).

25. The inaccurate reporting provided to Plaintiffs as described herein was not only patently incorrect, but also materially misleading. *See Levine v. JPMorgan Chase & Co.*, 46 F. Supp. 3d 871, 875 (E.D. Wis. 2014).

*Plaintiffs' Bankruptcy Filings*

26.  On March 2, 2022, Plaintiff filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana pursuant to 11 U.S.C. § 701 *et seq*. Plaintiffs' case was assigned Case Number 22-646-JJG-7 ("Bankruptcy"). BK ECF No. 1.

27.  In the bankruptcy petition ("Petition"), Plaintiff included obligations from Avant and NCB on Schedule F. *See id.*

28.  On May 24, 2021, Plaintiff earned a discharge of the Bankruptcy. *See* BK ECF No. 18. This discharged operated to discharge Plaintiff's obligations to Avant and NCB.

*Procuring of Credit Reports and Submission of Disputes*

29.  Pursuant to Section 1681g, Plaintiff requested and received his consumer reports from reporting agencies Equifax (August 16, 2022) and Trans Union (August 23, 2022). Collectively, these reports are entitled "Initial Credit Reports."

30.  On September 30, 2022, and pursuant to Section 1681i, written dispute letters for Plaintiffs were sent to Equifax and Trans Union regarding disputes of accuracy of the reported information on the Credit Reports, as specified below. Collectively, these reports are entitled "Disputes."

31.  Neither Equifax nor Trans Union responded to the Disputes.

32.  Subsequently, and again pursuant to Section 1681g, Plaintiff requested and received additional consumer reports from reporting agencies Equifax (January 5, 2023) and Trans Union (January 6, 2023). Collectively, these reports are entitled "Post-Dispute Credit Reports."

33.  All of the Credit Reports were "consumer reports" under 15 U.S.C. § 1681a(d).

34.  All of the Credit Reports also fell under than ambit of 15 U.S.C. § 1681g.

## AVANT FCRA VIOLATIONS – 15 U.S.C. § 1681S-2(B)

35.   Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

36.   On Plaintiff's Initial Credit Reports, Avant inaccurately reported Plaintiff's account as "charged off" instead of discharged in bankruptcy, which suggested to the world that the accounts had not been discharged and might still be collectible.  Additionally, Avant's Equifax reporting inaccurately stated that the account had been "paid for less than full balance," further suggesting that the accounts remained collectable.

37.   In the Equifax, and Trans Union Disputes, Plaintiff placed Avant on notice of the reported inaccuracies listed above, and requested that the information be corrected.

38.   Upon information and belief, upon receiving the applicable Disputes, the CRAs notified Avant of the applicable disputes based on their mandated statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

39.   Avant was required to conduct an investigation into this specific account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681s-2(b).

40.   A reasonable investigation by Avant at any point following the Disputes would have indicated Plaintiff's Avant account was discharged in his bankruptcy and was no longer collectible.

41.   However, there is no indication ever made all of the corrections Plaintiff requested. Equifax and Trans Union did not provide any reinvestigations to Plaintiff.  On Plaintiff's Post-Dispute Credit Reports, Equifax and Trans Union continued to report the account with the same inaccurate and incomplete reporting as Plaintiff had disputed; additionally, Avant also reported to Trans Union that the account had been settled in full for less than the full balance.

42.    By failing to correct Plaintiff's information, Avant ensured Plaintiff's information would continue to report inaccurately and inconsistently.

43.    These failures caused Plaintiff's consumer reports to include materially misleading omissions, which in context created misperceptions about Plaintiff's dispositions of the debt owed to Avant.

44.    Avant repeatedly failed to conduct a reasonable investigation, as required by 15 U.S.C. § 1681s-2(b).

45.    Avant failed to review all relevant information provided by Plaintiff in the Disputes, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

46.    Due to Avant's failure to reasonably investigate the Disputes, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(D) and (E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

47.    Avant's continued inaccurate and negative reporting of the debt in light of its knowledge of the actual error was willful.  Avant knew about the disposition of Plaintiffs' accounts because it received notice of Plaintiff's bankruptcy, and failed repeatedly to either correct the inaccuracies or even report the accounts consistently. At minimum, Avant's conduct was negligent.

48.    Plaintiff has suffered concrete and imminent harm to creditworthiness.  The Post-Dispute Credit Reports demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes.  Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have

factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

49. Also as a result of Avant's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Avant's inaccurate reporting, and damage to Plaintiff's creditworthiness. Plaintiff's credit reporting issues with Avant have also caused Plaintiff to suffer emotional distress. Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

50. Avant's conduct at least negligent, but also willful. Plaintiffs are, accordingly, eligible for statutory damages.

51. Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**NCB FCRA VIOLATIONS – 15 U.S.C. § 1681S-2(B)**

52. Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

53. On Plaintiff's Initial Credit Reports, NCB inaccurately reported Plaintiff's account to Equifax as "open," with a note that it had been "paid in full for less than full balance" and was a collection account. For Trans Union, NCB inaccurately reported the account as settled for less than the full balance, and as a paid collection. NCB should have reported

the account as discharged in bankruptcy, which would have demonstrated to the world that the account was discharged was not still collectable.

54.  In the Equifax, and Trans Union Disputes, Plaintiff placed NCB on notice of the reported inaccuracies listed above, and requested that the information be corrected.

55.  Upon information and belief, upon receiving the applicable Disputes, the CRAs notified NCB of the applicable disputes based on their mandated statutory duty pursuant to 15 U.S.C. § 1681i(a)(2).

56.  NCB was required to conduct an investigation into this specific account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681s-2(b).

57.  A reasonable investigation by NCB at any point following the Disputes would have indicated Plaintiff's NCB account was discharged in his bankruptcy and was no longer collectible.

58.  However, there is no indication ever made all of the corrections Plaintiff requested. Equifax and Trans Union did not provide any reinvestigations to Plaintiff.  On Plaintiff's Post-Dispute Credit Reports, Equifax and Trans Union continued to report the account with the same inaccurate and incomplete reporting as Plaintiff had disputed; additionally, NCB also reported to Trans Union that Plaintiff's first date of major delinquency was October of 2022, after his bankruptcy discharge.  This additional inaccurate and derogatory reporting threatened to result in reporting of this adverse account longer than the date of Plaintiff's bankruptcy filing, therefore "re-aging" the debt.

59.  By failing to correct Plaintiff's information, NCB ensured Plaintiff's information would continue to report inaccurately and inconsistently.

60.    These failures caused Plaintiff's consumer reports to include materially misleading omissions, which in context created misperceptions about Plaintiff's dispositions of the debt owed to NCB.

61.    NCB repeatedly failed to conduct a reasonable investigation, as required by 15 U.S.C. § 1681s-2(b).

62.    NCB failed to review all relevant information provided by Plaintiff in the Disputes, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

63.    Due to NCB's failure to reasonably investigate the Disputes, it further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(D) and (E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681s-2(b)(1)(C).

64.    NCB's continued inaccurate and negative reporting of the debt in light of its knowledge of the actual error was willful.  NCB knew about the disposition of Plaintiffs' accounts because it received notice of Plaintiff's bankruptcy, and failed repeatedly to either correct the inaccuracies or even report the accounts consistently. At minimum, NCB's conduct was negligent.

65.    Plaintiff has suffered concrete and imminent harm to creditworthiness.  The Post-Dispute Credit Reports demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes.  Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff.  Thus, the inclusion of derogatory information presents an

imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

66.    Also as a result of NCB's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging NCB's inaccurate reporting, and damage to Plaintiff's creditworthiness.  Plaintiff's credit reporting issues with NCB have also caused Plaintiff to suffer emotional distress.  Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

67.    NCB's conduct at least negligent, but also willful.  Plaintiffs are, accordingly, eligible for statutory damages.

68.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

## EQUIFAX FCRA VIOLATIONS – 1681E(B), 1681I, 1681G

69.    Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

70.    Equifax's above-referenced reporting on all of Plaintiff's consumer reports was also objectively unclear and inaccurate to a reasonable consumer like Plaintiff regarding its reporting of payment history and bankruptcy notations on the disputed tradelines from Avant and NCB, which would have caused an ordinary consumer to wonder whether the tradeline had been discharged or not, or whether Plaintiff had made any payments at all on these tradelines during his bankruptcy.  Accordingly, Equifax violated 15 U.S.C. § 1681g in connection with both the Initial and Post-Dispute Credit Reports from Equifax.

71.  As noted above, Equifax was a dispute regarding Plaintiff's reporting – the Equifax Dispute Letter – but it failed to adequately respond to Plaintiff, and re-reported the same and additional inaccurate and derogatory information on the NCB and Avant accounts.

72.  Equifax failed to conduct a reasonable reinvestigation in violation of 15 U.S.C. §§ 1681i(a)(2) and 1681i(a)(6) because a reasonable reinvestigation would have resulted in correction of the errors which Plaintiff had identified.

73.  On information and belief, Equifax's policies and procedures were not designed to ensure the maximum accuracy of the credit information it prepared on consumer reports, because, *inter alia*, it failed to provide any indication of its reinvestigation of the Centra tradeline. Such an internal failure would not have occurred but for the absence of reasonable checks and balances.  This violated 15 U.S.C. § 1681e(b).

74.  Plaintiff has suffered concrete and imminent harm to creditworthiness.  The Post-Dispute Credit Report demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes.  Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff.  Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

75.  Also as a result of Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Equifax's inaccurate reporting, and damage to

Plaintiff's creditworthiness.  Plaintiff's credit reporting issues with Equifax have also caused Plaintiff to suffer emotional distress in the form of fear of credit denials.  Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

76.    Equifax's violations of the FCRA were willful, because Equifax failed to properly respond to Plaintiff's dispute despite clearly having notice of the same; therefore, Plaintiff is entitled to statutory damages.  At minimum, Equifax's violations were negligent.

77.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

### TRANS UNION FCRA VIOLATIONS – 1681E(B), 1681I, 1681G

78.    Plaintiff reasserts and realleges all of the preceding paragraphs as if fully stated herein.

79.    Trans Union's above-referenced reporting on all of Plaintiff's consumer reports was also objectively unclear and inaccurate to a reasonable consumer like Plaintiff regarding its reporting of payment history and bankruptcy notations on the disputed tradelines from Avant and NCB, which would have caused an ordinary consumer to wonder whether the tradeline had been discharged or not, or whether Plaintiff had made any payments at all on these tradelines during his bankruptcy.  Accordingly, Trans Union violated 15 U.S.C. § 1681g in connection with both the Initial and Post-Dispute Credit Reports from Trans Union.

80.    As noted above, Trans Union was a dispute regarding Plaintiff's reporting – the Trans Union Dispute Letter – but it failed to adequately respond to Plaintiff, and re-reported the

same and additional inaccurate and derogatory information on the NCB and Avant accounts.

81.     Trans Union failed to conduct a reasonable reinvestigation in violation of 15 U.S.C. §§ 1681i(a)(2) and 1681i(a)(6) because a reasonable reinvestigation would have resulted in correction of the errors which Plaintiff had identified.

82.     On information and belief, Trans Union's policies and procedures were not designed to ensure the maximum accuracy of the credit information it prepared on consumer reports, because, *inter alia*, it failed to provide any indication of its reinvestigation of the Central tradeline. Such an internal failure would not have occurred but for the absence of reasonable checks and balances. This violated 15 U.S.C. § 1681e(b).

83.     Plaintiff has suffered concrete and imminent harm to creditworthiness. The Post-Dispute Credit Report demonstrated that numerous entities procured Plaintiff's consumer reports during the period preceding and following Plaintiff's disputes. Moreover, prospective creditors who wished to make a firm offer of credit or insurance to Plaintiff may have excluded Plaintiff from lists of consumers who received such offers, or else would have factored the inaccurate and confusing information into the terms of any firm offer they decided to extend to Plaintiff. Thus, the inclusion of derogatory information presents an imminent, material risk of harm that Plaintiff's creditworthiness has been, and continues to be, damaged.

84.     Also as a result of Trans Union's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation issues regarding credit standing, out-of-pocket expenses in challenging Trans Union's inaccurate reporting, and damage to Plaintiff's creditworthiness. Plaintiff's credit reporting issues with Trans Union have also

caused Plaintiff to suffer emotional distress in the form of fear of credit denials. Plaintiff has also suffered a concrete informational injury by failing to receive the complete and accurate reporting the FCRA entitled Plaintiff to receive.

85.    Trans Union's violations of the FCRA were willful, because Trans Union failed to properly respond to Plaintiff's dispute despite clearly having notice of the same; therefore, Plaintiff is entitled to statutory damages. At minimum, Trans Union's violations were negligent.

86.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION – PLAINTIFF VS. AVANT
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1682S-2(B)

87.    Plaintiff realleges all paragraphs above as if realleged herein.

88.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681s-2(b).

89.    Based on these negligent violations, Plaintiff is entitled to actual damages. 15 U.S.C. § 1681o.

90.    Based on these willful violations, Plaintiff is entitled to statutory damages. 15 U.S.C. § 1681n.

91.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

//

//

**SECOND CAUSE OF ACTION – PLAINTIFF VS. NCB**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1682S-2(B)**

92.    Plaintiff realleges all paragraphs above as if realleged herein.

93.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. § 1681s-2(b).

94.    Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

95.    Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

96.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**THIRD CAUSE OF ACTION – PLAINTIFF VS. EQUIFAX**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 168IE(B), 1681I, 1681G**

97.    Plaintiff realleges all paragraphs above as if realleged herein.

98.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i, 1681g.

99.    Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

100.    Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

101.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**FOURTH CAUSE OF ACTION – PLAINTIFF VS. TRANS UNION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 168IE(B), 1681I**

102.    Plaintiff realleges all paragraphs above as if realleged herein.

103.    The above allegations represent numerous violations of the FCRA, 15 U.S.C. §§ 1681e(b), 1681i.

104.    Based on these negligent violations, Plaintiff is entitled to actual damages.  15 U.S.C. § 1681o.

105.    Based on these willful violations, Plaintiff is entitled to statutory damages.  15 U.S.C. § 1681n.

106.    Plaintiff has been required to retain counsel to prosecute this action based on this defective investigation and reinvestigation, and is entitled to recover reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request the Court grant Plaintiff the following relief against each Defendant on Counts 1 through 4:

**FIRST THROUGH FIFTH CAUSES OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ.**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Huntington for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

1

**TRIAL BY JURY**

2          Pursuant to the Seventh Amendment to the Constitution of the United States of America,

3    Plaintiff is entitled to, and demands, a trial by jury.

4    Dated: November 4, 2023

5                                                    Respectfully submitted,

6                                                    /s/ *Miles N. Clark*
                                                    Miles N. Clark, Esq.
7                                                    LAW OFFICES OF MILES N. CLARK LLC
                                                    5510 S. Fort Apache Rd, Suite 30
8                                                    Las Vegas, NV 89148-7700

9

10                                                   *Attorney for Plaintiff, Robert T. Huffman*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28